United States District Court
Southern District of Texas
**ENTERED**
June 19, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT WAYNE MECKEL, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-00362 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Robert Wayne Meckel is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") and is currently incarcerated at the East Texas Treatment Facility in Henderson, Texas.  Proceeding *pro se*, Meckel filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on October 24, 2019.[1]  (D.E. 1).  Meckel raises four claims of ineffective assistance of counsel arising from a probation revocation proceeding.  Respondent filed a motion for summary judgment, to which Meckel has filed multiple responses.  (D.E. 13, 15, 28, 32).  As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Meckel's habeas corpus petition be denied.  It is further recommended that a Certificate of Appealability ("COA") be denied.

## I.   JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate

---

[1] Meckel stated under penalty of perjury that he placed his petition in the prison mail system on October 24, 2019, and it is considered filed as of that date.  *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998), and Rule 3, Rules Governing Section 2254 Cases.

because Meckel was convicted in San Patricio County, Texas.   28 U.S.C. § 2254(a); 28

U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.   BACKGROUND

### a.   Petition and Claims

In the § 2254 petition, Meckel raises four claims of ineffective assistance of

counsel.   First, he contends that counsel failed to raise an objection and failed to appeal

on the ground that the sentence imposed was disproportionate or qualified as cruel and

unusual punishment.   (D.E. 1 at 6, 10-12).   Second, he argues that counsel failed to call

several witnesses that would have rebutted the state's primary reason to revoke, which

was that he caused serious injury to his mother.   Meckel contends that counsel should

have called himself, his mother Loretta Beard, his mother's treating doctors, the Bexar

County district attorney, and attorney Michael Granados.   (*Id.*).   Third, he argues that

counsel erroneously advised him that he would receive a favorable outcome if he pleaded

true to the allegations, even though they were untrue.   (*Id.* at 7, 10-12).   Finally, Meckel

asserts that counsel failed to investigate because, if he had investigated, he would have

uncovered evidence to rebut the state's claim and prove that Meckel was not a danger to

society.   (*Id.*).

### b.   State Court Records

In April 2012, Meckel was charged in an indictment in San Patricio County with

one count of operating a motor vehicle in a public place while intoxicated ("DWI") for

the third time, in violation of Tex. Penal Code §§ 49.04, 49.09.   (D.E. 14-26 at 6).   On

May 18, 2012, Meckel pleaded *nolo contendere* to the charge pursuant to a plea bargain.

(*Id.* at 22-24, 27).  The state court sentenced him to a suspended sentence of eight years' imprisonment, instead to be spent on community supervision.  (*Id.* at 69).  Meckel's conditions of community supervision required, among other things, that he not commit or be convicted of any other crime or consume or possess alcohol in any form, and that he have a deep-lung breath analysis device installed on the vehicle he drove most often.  (*Id.* at 62, 65).

On March 9, 2017, the state moved to revoke Meckel's community supervision because he violated these conditions on February 16, 2017, by getting another DWI.  (*Id.* at 88-90).  In four specific allegations, the state alleged that Meckel, while intoxicated, operated a motor vehicle without a deep lung breath analysis device installed and, in doing so, caused serious bodily injury to Loretta Beard, his mother.  (*Id.* at 92).

According to the revocation report prepared for the court, Meckel was arrested for DWI in February 2017 after crashing his vehicle into a bar.  (D.E. 14-27 at 34).  At the time of the offense, he was operating the vehicle without the ignition interlock device installed.  His mother was also in the car at the time and was transported to the hospital by ambulance.  (*Id.*).

At the revocation hearing on February 9, 2018, Meckel was placed under oath and stated the following.  (*Id.* at 6).  He received the conditions of his community supervision and understood them.  (*Id.* at 6-7).  He understood the allegations in the motion to revoke.  (*Id.* at 7).  He was not under the influence of any alcohol or drugs at the time of the hearing, and although he was taking medication for bipolar disorder and major depression disorder, he did not believe that either illness prevented him from understanding the court

3

proceedings.  (*Id.* at 7-8).  The court found Meckel to be competent.  (*Id.* at 8).  The court, after confirming that counsel Michael George was appointed rather than retained, inquired whether Meckel was satisfied with his representation, and he responded that he was.  (*Id.*).  The court explained that the purpose of the hearing was to determine whether he had violated the terms of his community supervision and, if he did, what to do about it.  (*Id.* at 8-9).  The court noted that the response could range from doing nothing and leaving Meckel on his current terms of community supervision to sentencing to eight years in prison.  (*Id.* at 9).  Meckel indicated that he understood.  (*Id.*).

The state introduced various waivers and stipulations signed by Meckel, including a stipulation and judicial confession.  (*Id.* at 9-10).  Meckel confirmed that he reviewed these documents with counsel and that he understood and signed them.  (*Id.* at 9-11).  Meckel indicated that he was pleading true to all four allegations in the motion to revoke.  (*Id.* at 11).  He stated that no one was forcing him to plead true and that he was doing so freely and voluntarily.  (*Id.*).  The court confirmed that Meckel knowingly signed the judicial confession and took his plea of true.  (*Id.* at 12).  Meckel stated that he was pleading true because he violated the terms and conditions of his community supervision as set forth in the motion to revoke and that no one had coerced, threatened, or made promises to him in return for his plea.  (*Id.* at 12-13).  The court accepted the judicial confession and found that Meckel had violated the terms and conditions of community supervision.  (*Id.* at 13).[2]  The state recommended revocation and introduced the presentence investigation report in support.  (*Id.*).

---

[2] The judicial confession is available at page 116 of D.E. 14-26.

Counsel called Meckel's sister, Tammy Burns, who testified to the following.  (*Id.* at 13-14).  Meckel suffered from addiction, but he also had bipolar disorder and major depression disorder.  (*Id.* at 16).  Before the incident, he lived with their mother and took care of her.  (*Id.*).  Since the DWI in February 2017, she had seen a big change in Meckel's behavior, and he had earned a number of certificates while he was incarcerated in Bexar County.  (*Id.* at 17).  Burns wanted the judge to know that Meckel was a better caretaker because he was someone their mother trusted.  (*Id.* at 18).  Burns was sure that he was not going to drink again.  (*Id.*).  On cross-examination, Burns stated that she had never seen Meckel drinking when she visited him and their mother prior to February 2017.  (*Id.* at 20).  She agreed that the February 2017 incident was pretty bad, that he was drinking, and that he did not have the breath device installed on the car.  (*Id.*).

The state again recommended revocation.  (*Id.* at 21).  In response, counsel argued that Meckel had over 1,000 days of creditable time from either being incarcerated or being in drug and alcohol programs.  (*Id.*).  He argued that Meckel had done well in these programs and generally did well when he was in a structured environment.  (*Id.* at 21-22).  Moreover, he argued that Meckel still had pending charges in Bexar County for the DWI itself.  (*Id.* at 22).  He requested that the court put Meckel back in a relapse prevention program, even if the court also gave him a sentence of incarceration.  (*Id.*).

The court sentenced Meckel to eight years' imprisonment.  (*Id.* at 22-23).  The court noted that this was based on his original plea bargain agreement, which meant that his right to appeal was limited.  (*Id.* at 23).

On February 21, 2018, Meckel filed a *pro se* notice of appeal.  (D.E. 14-26 at 131-

5

32).  On the same day, counsel filed a motion to withdraw and a notice of appeal.  (*Id.* at 134-37).  The court granted the motion to withdraw and appointed new counsel on appeal.  (*Id.* at 140).

On direct appeal, Meckel raised a single claim that his eight-year sentence was disproportionate and represented a cruel and unusual punishment.  (D.E. 14-2 at 1).  The Thirteenth District Court of Appeals affirmed the sentence because Meckel did not object to the sentence at the hearing or in a post-judgment motion and, thus, did not preserve the argument for review.  (*Id.* at 3).  Meckel later filed a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals ("TCCA") raising the same claim.  (D.E. 14-19 at 1-11).  The TCCA refused the petition.  (D.E. 14-10 at 1).

In March 2019, Meckel filed an application for a writ of habeas corpus under Tex. Code of Crim. P. art. 11.07.  (D.E. 14-36 at 23-56).  In the Article 11.07 application, Meckel raised the same claims as in his present § 2254 petition, along with additional claims.  (*See id.*).  Meckel attached a text conversation between his sister and counsel Michael George in which, among other things, George: (1) generally discussed the Bexar County proceedings[3] with her; (2) stated that the Bexar County judge should have spoken with Meckel's mother because she was the victim in that case, but she was not the victim in the San Patricio County case; (3) stated that Meckel was 99% sure to lose an appeal of the eight-year sentence because it was within the range Meckel agreed to in his original plea deal; and (4) stated that he did not have Meckel's mother testify because everyone told him she had dementia and he did not know what she might say.  (*Id.* at 59-61).

---

[3] George was not Meckel's counsel in the Bexar County proceedings.

George stated the following in an affidavit.  (D.E. 14-35 at 15-17).  He did not give Meckel erroneous advice and Meckel knew the maximum and minimum he could receive if the judge revoked his community supervision.  (*Id.* at 15).  He never told Meckel that the punishment would be state jail or that, if he agreed to the exhibits and signed, he would only get two years.  (*Id.*).  Meckel pleaded true because the allegations were true.  (*Id.* at 16).  His mother was taken to the hospital and whether she suffered serious bodily injury or bodily injury was inconsequential because the state could prove that Meckel committed a fourth DWI while on community supervision for his third DWI and caused an accident.  (*Id.*).  He did not call Meckel's mother to testify because she suffered from a form of dementia.  (*Id.* at 18).  He did not fully examine Meckel's sister because he did not want the fact that she was instrumental in having Meckel prosecuted to become part of the record.  (*Id.*).

The state trial court recommended that the Article 11.07 application be denied because Meckel failed to show that counsel performed deficiently or that he suffered any prejudice from counsel's performance.  (*Id.* at 21-22).  A judge of the TCCA denied the application without a written order based on the trial court's findings.  (D.E. 14-28 at 1).[4]

---

[4] There are two other Article 11.07 applications in the record.  (*See* D.E. 14-43 at 5-26; D.E. 14-46 at 4-19).  However, these applications pertain to Meckel's Bexar County DWI proceedings.  While related to the proceedings at issue here in the sense that it was the Bexar County DWI that led to Meckel's revocation in San Patricio County, these applications and all the documents included with them have no direct application here because they concern an entirely separate conviction.  They would not have been in the record considered by the San Patricio County court and TCCA in considering the revocation proceedings.  *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) (stating that review under § 2254(d)(1) is limited to the record that was before the state court).

### III.     DISCUSSION

*a.     Standard of Review*

A § 2254 petition raising claims that were adjudicated on the merits in state court may not be granted unless the adjudication of the claim: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).  Notably, when considering the facts of a habeas case, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else

8

contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This is a difficult standard to meet. *Id.* at 102-03.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Even summary rulings by state courts are afforded deference under § 2254(d), and in such cases, the relevant question is what arguments or theories could have supported the state court's decision. *Id.* at 99, 102.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

9

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.* at 687-88.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690.

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 695.

Federal court review of a state court's denial of an ineffective-assistance claim is "doubly deferential" because the court must give deference both to counsel's performance and to the state court's conclusion. *Cullen*, 563 U.S. at 190. Federal habeas

10

courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

> b. *Failure to Object to Sentence as Disproportionate*

In the motion for summary judgment, Respondent argues that the sentence was not disproportionate because Meckel plea-bargained for an eight-year sentence of imprisonment, which would have been served on community supervision had he not then violated the terms. (D.E. 13 at 13). Further, Respondent contends that the eight-year sentence is less severe than other sentences that have been upheld following proportionality challenges. (*Id.* at 13-14). To the extent that Meckel argues that counsel forfeited his right to appeal, the Respondent argues that this is plainly untrue because Meckel did appeal. (*Id.* at 14).

Meckel responds that he submitted evidence to the state court showing that counsel believed he had a 1% chance of succeeding on appeal, but nonetheless did not preserve any objection to the length of the sentence and therefore precluded Meckel from raising such an argument on appeal. (D.E. 15 at 1; D.E. 28 at 1; D.E. 32 at 2). He argues that an eight-year sentence for his first felony DWI was excessive and that counsel failed to call witnesses or present evidence showing that the maximum sentence was not appropriate. (D.E. 28 at 1-2).

In *Rummel v. Estelle*, the Supreme Court stated that: "[O]ne could argue without

fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence imposed is purely a matter of legislative prerogative." 445 U.S. 263, 274 (1980). The Court left open the possibility that the proportionality principle could come into play in an extreme example, such as if overtime parking was turned into a felony punishable by life imprisonment. *Id.* at 274 n.11.

However, the Court later stated that "[t]here is no basis for the … assertion that the general principle of proportionality does not apply to felony prison sentences." *Solem v. Helm*, 463 U.S. 277, 288 (1983). The Court did conclude, however, that outside of capital punishment, successful challenges to the proportionality of sentences would be exceedingly rare. *Id.* at 289-90. Courts must grant substantial deference to the authority of legislatures in determining the types and limits of punishments for crimes, along with recognizing the discretion trial courts have in sentencing offenders. *Id.* at 290.

Subsequently, a plurality of justices concluded that the Eighth Amendment contains no proportionality guarantee and rejected the holding in *Solem*. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). While a majority in *Harmelin* could not agree about the application of the proportionality principle, they did hold that, beyond proportionality, sentences of an especially severe length do not violate the Eighth Amendment on any other ground because, while they may be cruel, they are not also unusual. *Id.* at 994-95.

When discussing this background, the Court in *Lockyer v. Andrade* noted that its precedents regarding the proportionality principle in noncapital cases were not "a model

12

of clarity." 538 U.S. 63, 72 (2003). The Court nonetheless concluded that a "gross disproportionality principle is applicable to sentences for terms of years," although "the precise contours" of this principle were unclear and it would only apply in "exceedingly rare" or "extreme" cases. *Id.* at 72-73. Thus, in the context of a § 2254 petition, the Court concluded that the state court did not unreasonably apply clearly established federal law when it concluded that two consecutive terms of 25 years to life in prison were not grossly disproportionate for a recidivist convicted of stealing a total of nine videotapes from K-Mart. *Id.* at 66, 77

Here, Meckel has not established that he was prejudiced by counsel's failure to object to the length of his sentence because he did not have a viable Eighth Amendment claim. Meckel is correct that counsel failed object to the length or proportionality of the sentence. (*See* D.E. 14-27 at 22-23). This prevented Meckel from raising these arguments on appeal. (D.E. 14-2 at 3). However, even if the failure to object qualifies as deficient performance, Meckel has not established that he was prejudiced by the failure. *Strickland*, 466 U.S. at 687-88. The claim that Meckel attempted to raise on direct appeal, and that was subsequently found by the state appellate court to be waived, was based solely on the Eighth Amendment. (*See* D.E. 14-13 at 9-12). To the extent this argument was based on anything other than proportionality, the Eight Amendment provides no protection against excessively long sentences of imprisonment. *Harmelin*, 501 U.S. at 965, 994-95.

Further, as to proportionality, Meckel's sentence is subject to a "gross disproportionality" standard that applies only in exceedingly rare or extreme cases.

13

*Lockyer*, 538 U.S. at 72-73.  Meckel's offense and background fall somewhere between the recidivist defendant in *Lockyer*, whose consecutive 25-year-to-life sentences were not grossly disproportionate, and the theoretical case given in *Rummel* of a life sentence for an overtime parking offense.  *See id.* at 66; *Rummel*, 445 U.S. at 274 n.11.  In this case, the record indicates that, while on community supervision for his third DWI offense, Meckel committed a fourth DWI offense that involved bypassing the breath analysis device in his car and crashing into the side of a building while there was a passenger in the car.  (D.E. 14-27 at 12-13, 34).  The record shows that Meckel was a repeat offender who continued to commit the same offense, explicitly ignoring and avoiding the terms of his community supervision to do so.  Under these circumstances, Meckel has not shown that his eight-year sentence represents the type of exceedingly rare or extreme case contemplated by the gross disproportionality standard.  Accordingly, Meckel has not established that the state court's conclusion that he was not prejudiced by counsel's performance was contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

    *c.*   *Failure to Call Certain Witnesses*

Respondent contends that Meckel's guilty plea waived any claim beyond those challenging the voluntariness of the plea, his understanding of the charges against him, and his understanding of the consequences of the plea.  (D.E. 13 at 15).  Thus, Respondent argues that Meckel waived any claim about counsel's failure to call certain witnesses when he pleaded "true" to the allegations, including that he injured his mother. (*Id.* at 15-16).

14

Meckel responds that his mother's injuries existed before the accident and that the state would have been unable to offer any proof that the accident was the cause. (D.E. 15 at 1-2). He argues that the treating doctors would have testified that the injuries did not come from the accident and that his mother would have testified that she forced him to drive. (*Id.* at 2). Meckel asserts that counsel never even talked to his mother to determine whether she was able to testify. (D.E. 28 at 3).

Once a guilty plea has been entered, the defendant waives all non-jurisdictional defects in the proceedings, including all claims of ineffective assistance of counsel outside of claims that the alleged ineffectiveness affected the voluntariness of the guilty plea. *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008); *Brown v. Cockrell*, 32 Fed. App'x 32, 2002 WL 334622 at *1 (5th Cir. 2002) (applying the same standard in a § 2254 case). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Where the only source of the missing witnesses' testimony is the defendant, courts view such testimony with caution. *Id.*

Here, Meckel waived this claim when he pleaded true to the allegations. Counsel's failure to call particular witnesses at the revocation hearing does not relate to whether Meckel knowingly and voluntarily entered the guilty plea. *Cavitt*, 550 F.3d at 441.

Further, even if this claim is not waived, Meckel has not established that the state court's conclusion that counsel's performance was not deficient was contrary to, or an unreasonable application of, clearly established federal law because he has not shown that counsel's failure to call these witnesses was unreasonable.  First, as to Meckel's mother, counsel stated in both his affidavit and the text messages to Meckel's sister that he did not call her because she had dementia and he did not know what she would say. (D.E. 14-35 at 18; D.E. 14-36 at 59-61).  Although Meckel argues that his mother could have testified, the state court implicitly made a finding in counsel's favor on this issue, and Meckel has not rebutted this finding with clear and convincing evidence.  (*See* D.E. 14-35 at 21-22); *Garcia*, 454 F.3d at 444.  As to the treating doctors, Meckel is the only source of what their testimony would be.  He never submitted any of the medical records that purportedly show that his mother had preexisting injuries, nor did he ever submit an affidavit or declaration from his mother or any treating doctor that supported that position.  Meckel's conclusory allegations, standing alone, are insufficient to support his claim.  *See Ross*, 694 F.2d at 1011; *Lockhart*, 782 F.2d at 1282.  Meckel never explains what the Bexar County district attorney or Michael Granados would have testified to. Accordingly, Meckel has not established that the state court's conclusion that counsel's performance was not deficient was contrary to, or an unreasonable application of, clearly established federal law.

> d.   *Erroneous Advice*

Respondent argues that Meckel's claim regarding counsel's erroneous advice is contradicted by the record, particularly counsel's affidavit refuting the claims.  (D.E. 13

at 16-17). Further, Respondent contends that during the revocation hearing, Meckel acknowledged that he could be sentenced to eight years' imprisonment. (*Id.* at 17).

Meckel responds that he only pleaded true due to the state of mind he was in after talking to counsel. (D.E. 15 at 3). He argues that counsel's affidavit is flawed, contradicted by the record, or indicative only of counsel's opinion rather than fact. (D.E. 32 at 1).

Here, Meckel has not established that he received erroneous advice from counsel. Counsel's affidavit states that he did not give Meckel erroneous advice and refutes each of Meckel's specific claims on this issue. (D.E. 14-35 at 15-16). In denying the Article 11.07 application, the state court made a factual finding in counsel's favor regarding the advice he gave to Meckel. (*Id.* at 21). This factual finding is presumed to be correct, and Meckel has not rebutted that presumption with any other evidence, much less clear and convincing evidence. *Garcia*, 454 F.3d at 444. Moreover, the state court explained the possible consequences of pleading true at the revocation hearing, including the possible maximum sentence, and Meckel indicated that he understood. (D.E. 14-27 at 9). Thus, Meckel has not established either that the state court's construction of the evidence was unreasonable or that the court's conclusion that counsel's advice was not ineffective was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

    *e.   Failure to Investigate*

Finally, Respondent argues that Meckel's claim regarding counsel's failure to investigate is conclusory and meritless because he does not explain what any additional

17

investigation would have uncovered.  (D.E. 13 at 18).  Moreover, Respondent argues that the state court record included medical records showing that Meckel's mother was injured in the incident and that counsel did not call her to testify because she suffered from dementia.  (*Id.*).

Meckel responds that medical records from before the accident would have proven that his mother's injuries were preexisting.  (D.E. 15 at 1-2; D.E. 28 at 2-3).  Meckel contends that counsel should have contacted his lawyer in the separate criminal proceeding for the DWI that led to the revocation, but never did so.  (D.E. 28 at 2).

Counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that an investigation is unnecessary.  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  The reasonableness of the investigation depends partially on information provided by the defendant, which in some cases will be the determining factor.  *Id.*  However, when counsel has notice of potentially mitigating evidence, he is no longer justified in relying solely on what the defendant tells him.  *Id.*  In raising a failure-to-investigate claim, a defendant must specifically allege what the investigation would have found and how it would have altered the outcome.  *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993).

Here, Meckel has not established that the state court's conclusion that counsel's performance was not deficient was contrary to, or an unreasonable application of, clearly established federal law because he has not shown that counsel failed to investigate.  In his affidavit, counsel stated that he conducted an investigation and concluded that Meckel's mother's injuries resulted from the crash.  (D.E. 14-35 at 15-17).  In denying the Article

18

11.07 application, the state court made a factual finding in counsel's favor on this issue. (*Id.* at 21-22). Further, Meckel was his mother's caretaker and would have known about any injuries she had prior to the accident. (*See* D.E. 14-27 at 16). It was incumbent on Meckel to tell counsel about this fact if he wanted counsel to investigate it. *Ransom*, 126 F.3d at 723. If Meckel did tell counsel but was ignored, he was given the opportunity to inform the court of this issue at the revocation hearing, but instead stated that he was satisfied with counsel's representation and pleaded true to all of the allegations, including that his mother was injured in the accident. (D.E. 14-27 at 8, 11); *Blackledge*, 431 U.S. at 74 (noting that solemn declarations in open court carry a strong presumption of verity). Under these circumstances, Meckel has not established that the state court's conclusion that counsel's performance was not deficient was contrary to, or an unreasonable application of, clearly established federal law.[5]

   *f.   Additional Grounds*

   On April 1, 2020, after the Respondent filed the motion for summary judgment and Meckel submitted his first response, Meckel filed a document that purported to be three additional grounds for his § 2254 petition. (D.E. 26 at 1-2). Even were these grounds properly filed as amendments to the petition after obtaining leave of the court under Federal Rule of Civil Procedure 15, which they were not, they lack merit. In the

---

[5] Further, to the extent that the documents from Meckel's other two Article 11.07 applications can be considered, the medical records do not support his argument. (D.E. 14-46 at 75-80). Instead, they indicate that his mother was taken by ambulance to the hospital with back pain and was diagnosed with a closed fracture of the lumbar spine. (*Id.*). If she had preexisting back injuries, it does not appear that anyone told the paramedics this information. (*See id.*).

first two claims, Meckel argues that the state trial judge was biased against him because he had appointed counsel and the judge has a pattern of giving higher sentences to defendants with appointed counsel.  (*Id.* at 1).  However, bald assertions by a petitioner are insufficient and there is no other evidence in the record to support this claim.  *Ross*, 694 F.2d at 1011.  In the third claim, Meckel contends that counsel failed to call him or his mother as witnesses, which were arguments already raised in his original four claims and which were discussed further above.  (D.E. 26 at 1-2).

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Meckel has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Here, it is recommended that the claims be dismissed on the merits. Reasonable jurists would not find it debatable that Meckel's ineffective-assistance claims lack merit. Therefore, it is further recommended that any request for a COA be denied.

## V.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 13) be GRANTED. Meckel's § 2254 petition should be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 19th day of June, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).